The next matter, number 23-1163, United States v. Jorge Flores-Alvarez. At this time, would the counsel for the appellant please introduce himself on the record to begin. Good morning. I'm a police reporter. Attorney Inglis Alvarez on behalf of the appellant, Mr. Flores. May I reserve two minutes for rebuttal? You may. You may begin. Mr. Flores was nothing more than here for a meal, but the court denied him a mitigating rule deduction based on three reasons. First, it failed to follow the mitigating rule analysis that his court crystallized in Walker, in which your fellow public defender articulated previously in the other case, correct? Yes, sir. Seconded that you're in court, were you? Yes. We also, in our briefing and before the district court, we laid out exactly the same analysis that Walker did. We identified the areas of the difference and asked the court to consider the average Mr. Flores' flexibility relative to that of the identified person. Let me ask you a question similar to what I asked in the previous case. Obviously, that was a y'all here. We have an airport mule. Are you saying that everyone in your client's role, we get in the court regulars' constant cases like this, everybody should be entitled to at least two levels of deduction? No, because there are no blanket rules on the mitigating rule deduction. It has to be a fact-specific analysis. However, if Mr. Flores isn't entitled to a rule deduction as an airport mule, it is kind of hard to imagine an airport mule that would receive. He is significantly less vulnerable, has very limited actions in this case. So if he doesn't receive it, it's hard to imagine what airport mule would receive it. The court also misinterpreted the guidelines commentary when they identified the factors, but it never applied them in lay doubts. It never compared Mr. Flores' culpability to the degree that he met each of the factors and to the degree his culpability compared to the other ones. Specifically, I think the most telling one— Who did you put in the universe in this particular case? We identified six participants. We identified Mr. Flores as clearly the less culpable. We identified the owner of the narcotics. We identified the— Ask about that. So the owner of the narcotics, but you didn't know who he was, right? It's just, right, with any specificity, correct? We don't know his identity. Mr. Foote, what we heard in speaking with the recruiter— Well, let's say he didn't. I'm just trying to think about how we do this. So there's always an owner of the drugs, right? The owner, it's not going to be the person who took the point quite. Sometimes we know who that is, and sometimes we just know they must exist. In your view, and maybe this isn't the must-exist case, but should this analysis include the must-exist participants, that anyone who knows anything about how a drug conspiracy works, they must exist? How do we do it? Do we include them or not, in your view? I think it still has to be fact-specific, but in an air-forward mule case, I think the court should consider that there are necessary participants, individuals that necessarily carried out certain actions, which the defendant, being a mule by their very nature, is not going to be able to have that much knowledge or be able to identify them. But in every case, there's going to be somebody who owns the narcotics. In the case specifically here, we have not the identity, but we know that there was a participant that owned the narcotics. So ultimately, yes, in mule cases, particularly, they will have limited knowledge, and the court has to understand that clearly somebody has to own the drugs. Let me ask you, and I'm referring to the supplemental appendix 85-87. Judge Arias-Marswatch cited the Arias case. Walker is not out yet, but Walker cites Arias. But he basically, and I'll hold for a minute, he says, to that end, the court must consider a universe composed of those involved in drug and conduct as a whole. Again, I'm coined from the First Circuit, as we have explained, where defendants hire, transport, sale, and shipment drugs, and if none otherwise participate in a larger conspiracy, the drug and conduct will be limited to that shipment. Isn't Judge Arias basically doing the analysis that we're requiring Walker there? No, because the telling phrase here is that focus should be on this specific shipment, not the broader conspiracy. And the use of broader conspiracy doesn't make sense here, because every participant that we identified was a participant in this conspiracy. But he is saying that he has to consider the universe composed of all of the involved. And then he said that. But he does say that. But he excludes broader conspiracy, members of the broader conspiracy. And he never asks them to consider individuals that were not participants. So that's why we say that the court committed a legal error by failing to identify the universe of the participants, because broader conspiracy doesn't make sense here. So you're saying the court's misidentified the universe. Same as in Walker, the record here is insufficient to determine who are the participants that the court identified. We identified six participants. The government identified additional participants. But the court referred to a broader conspiracy when every participant that the parties identified was in relation to this specific offense. That is the legal error of transplanting, I think, Monsanto's language concern about the broader conspiracy to this case. I think Monsanto's ultimate question there was that the record – by any other individuals or participants. And that's why he mentioned he excluded the broader conspiracy. That's not the case here. And again, every single participant we identified was relative to this specific offense. I'm sorry, just this one. When you say identified, you mean not necessarily by name but by role? Correct. We identified six participants or six individuals that performed specific roles in this offense. And we have the owner who was – who put this conspiracy in motion. We called the recruiter and said, find me someone who can serve the renewal. And then that person, the recruiter, recruited Mr. Flores, picked him up, and told him to call the travel coordinator and provide him with the information so the travel coordinator would be the third person that received Mr. Flores' information. And then the day before he was to fly, he called him and called Mr. Flores and said, this is your flight information. Be at this place in 24 hours. Then the recruiter then picked up Mr. Flores and drove him to that location. Then another person, the driver, picked up Mr. Flores and handed him a suitcase that was locked with narcotics packaged already inside Mr. Flores because he had never had a key to that suitcase, dropped him off at the airport. Mr. Flores, the only thing he did was lock the suitcase from the curbside drop-off to the check-in counter. And there was an individual that was to receive Mr. Flores in the suitcase in Philadelphia. We clearly have more knowledge because he knew Mr. Flores' identity and had been tapped by somebody else to find Mr. Flores. So relative to those folks that you just identified, how would you argue that your client is less culpable than those other particular players in this scheme? We believe Mr. Flores is at the lower end of the spectrum of culpability. How can the district court figure that out? How can the district court figure out, okay, this person drove him and he came to the airport? How is the district court supposed to figure out if that's a minor role or if there was his home role, was driving to the airport? How is the district court, as a practical matter, supposed to make that factual determination? By applying the guideline factor. That is what allows a court to compare the degree of culpability of one participant against the other. Let me ask you, you agree that you carry the burden of proving the applicability of that enhancement, right? Right. What else did you present to the court for the court to be able to consider that enhancement or to err in not applying it? Well, we identified the six participants and we detailed the actions that each of them took. And we compared Mr. Flores' level of culpability in terms of how we met or how we agreed to each of the factors. Let me ask you, when you talk about those participants, you identified that the government had no objection to those particular participants, or was it a contested issue? The six participants identified were never contested before the district court. And that's why this court statement about excluding a product conspiracy is problematic here. It shows that it failed to identify the units of participants. The six participants were uncontested before the district court. Thank you. Okay, thank you. Thank you, Counsel. At this time, if Counsel for the Appellee of the United States would please introduce himself on the record to begin. Good morning, Your Honors, and may it please the court, Ricardo Humberto Fernandez for the United States. I'd like to jump right in and try to address a question or a concern that the court has referred to already a bunch of times, and that's how do we define or how do we understand identifiable or discernible in this context. And I think the thing that has yet to be mentioned is that Arias-Mercedes includes the instruction in there that the other participants that are identified have to be borne out by the record, borne out by the evidence. And that is a crucial consideration when a defendant tries to shoulder their burden of establishing the universe of participants. Just one is, I know this shows something, but on their own word, a person's statement can be evidence. Yes, Your Honor, but there's no statement on the record here. There's only arguments by the parties, which in some circumstances can constitute proffers, but in this court… Whether the defense is proffer or everybody, the defense counsel basically said there were six persons and nobody was contesting the six persons. So if the government doesn't contest those six persons exist, the court can consider that. Well, Your Honor, I think that's an unfair assessment of the government's position below. The government, in replying to Mr. Freitas' objections to the PSR, made clear to the court the thrust of the argument in that motion was that the other participants have to be borne out by the evidence. And that is a clear response to the defendant's initial objections, which included a series of allegations of… I'm sorry, Your Honor. What exactly did the government say? The government said that Arias Mercedes and this court and other precedent of this court constructs the court that, number one, it can't look to a conspiracy writ large, and it can't… I understand that. I understand that to mean in a conspiracy you can have an organization doing all sorts of different drug activity, right? Yes. But this person's involved in this shit. By shit, we don't just mean you took the suitcase on the plane. We mean all the people involved in making that shipment happen. And so, right, is that the group of people? Not just the person either on the boat or on the plane. Yes, Your Honor. We are in agreement on that, although I do believe Arias Mercedes could be read in a… But that's not a conclusion of it, is it? I mean, that doesn't logically… Don't just tell me the case says that. Logically, that's not what we're talking about. That's not – in this case, that's not the United States, the government's position in its brief, or at least its primary position, although it does make the Arias Mercedes being narrow argument in the alternative. But the primary position is that it's twofold. It's first that the other participants have to be borne out by the record, borne out by the evidence, and that is only – that would only include a single participant in this case. And even if the court considered all of them, then that would still not be error. And I'd like to make two further points on that. He did give a safety valve statement. Did this defendant give a safety valve statement? Yes, Your Honor, he did. And so in his statement, he said there were six other people involved. I don't know what his statement said in the safety valve. I do know that in its motion replying to the defendant's objections to the PSR, the government laid out that a safety valve debriefing had occurred, said that it would not oppose or grant the safety valve or recommend the safety valve to the court, but it also said that it could not corroborate anything that Mr. Flores said. However, as to what Mr. Flores actually said in that debriefing, I have no knowledge of that, and that was not placed on the record, and that was not provided to the court to aid it in its analysis. Let me also ask this. When you qualify that the defendant qualifies for the safety valve, one of the five factors under Section 2553, for instance, F, or the corresponding guideline, C1.2, if I'm not mistaken, is that the individual will not be a leader, manager, or organizer. So by qualifying for the safety valve, he is not. And therefore, wouldn't this imply that there are at least some others who are organizing because he's not the leader, manager, or organizer? And that puts him in a—at least, A, not six people, but it puts him in a universe of some other individuals. Within that, where do you warrant the conspiracy of those participants? Your Honor, two points. Him not being an organizer or occupying some of the roles the court just mentioned is not entitled him to a mitigating role. But to get to your— No, not automatically, but it certainly—and don't you agree that at least it shows or demonstrates that there are some other individuals. If not, he would not qualify for the safety valve. Your Honor, that would be a rational take or a reasonable way to think about it, but that does not mean that such an organizer is born out of the record or that it would be speculative to assume what the organizer would look like in this case or even how many organizers there were. We have no clue in this case because the record does not bear it out. Counsel, I mean, the reason I asked you about the safety valve is because I don't think this case is one of the other ones I believe that's coming up where there was a recommendation that there be a role adjustment. And because of what he said in his safety valve interview, that was withdrawn because his statements that you're saying we should ignore were used to say, you know, there's a lot more culpability here than we originally assessed. So for purposes of increasing his culpability, his statement would be reliable. But you're saying that for the purposes here, we should consider what he said as part of the record. Your Honor, I think if I could clarify my earlier answer, my position isn't that. I'm not going into whether relying on a safety valve is appropriate or not. I think in certain contexts it could be or not be. My answer in this case, as it pertains to the situation here, is that nothing about the safety valve in briefing was placed on the record or provided to the court. So I don't think anything said or specified in the safety valve briefing could inform the court's analysis in this particular case. That was my answer. So you're saying that it is only in the objection to the PSR where the defendant said there were other participants, and you're saying that that isn't officially part of the record? No, I'm saying that it is part of the record, but those are mere allegations, and Arias Mercedes instructs that the participants have to be borne out by the evidence. I want to make— I'm going to come back to if there are allegations that are objected to, why should the defendant have a further burden if there's no objection by the state to the allegation? Your Honor, I think reading the government's motion in response to those objections, the government forcefully sets out that the other participants have to be identifiable and borne out by the record. If I could move on to a separate point I want to make, because my colleague referred to the court's allusions to Arias Mercedes in its rationale to imply that just because the only interpretation of the court having mentioned the limitations of Arias Mercedes on the universe of participants means that it excluded people in this case. I don't think that's a fair assessment, and I think it's very easy to explain why the court went into that portion of Arias Mercedes in this case, because in the government's motion, the government, although it did not make a concession, it made an argument where it gave an illustrative example of what these sort of organizations sometimes look like and the roles that certain participants can occupy within those organizations. So I think the court reading that was in a position to appropriately cite that portion of Arias Mercedes to make sure that it was clear from the record that it was excluding that. Here's what's troubling me. Here's the analysis of the district court of the factors. Yes, Your Honor. Turning to the circumstances, he agreed to transport the drug shipment. He accepted the luggage. He checked into the airline in which he traveled, but he was intercepted before boarding. So he's a mule. He didn't plan it. He exercised a degree of acceptance, of discretion, in accepting to participate, which doesn't distinguish him from anyone, and he agreed to take $5,000, which is the one-time payment. So all that tells me is he agreed to be a mule, had no ownership of the drugs, and got $5,000. To me, that is the fact pattern of a mitigating rule adjustment, and somehow the judge says those facts as the basis for not giving a mitigating rule adjustment. I mean, all he says is this is a guy who said I'll take the suitcase and I'll take $5,000. Yes, Your Honor. My answer to your question would be in two parts. First, I'm going to address the discretion comment. I think in context, in this case, the court was referring more to the fact that Mr. Flores was not so much recruited as he volunteered. As he said to the court in his sentencing hearing, he overheard a conversation from an acquaintance and then later called that acquaintance and said I'll do it. So I think that speaks to the nature of the defendant's participation, which is a proper consideration under the factors, and I think in context, that's what the court was referring to because of course the court knows that simply accepting to participate is simply a basis for criminal liability. I'd also point out that there are other cases by this court that mention the defendant's acceptance to participate in its holdings as a factor that can form the analysis, and those would be Alias Mercedes itself and Andino Rodriguez, which knows that— Excuse me. If you didn't accept to participate and you were forced to participate, you are not guilty. Oh, yes, Your Honor, I do, which is why I'm making the point that in this case it goes beyond that. It's more of a volunteering thing rather than a simple acceptance, and I think that colors the nature of his participation, especially in this sort of case where the court, as Judge Helpe mentions, gets these cases often, and the pattern of recruitment is much different for other defendants. So this court was likely struck by his volunteering in this case as something that colored its analysis. As to get to the rest of Your Honor's question, those determinations that the court made or those factors that weighed in conjunction with the facts of this case could be, in other cases, a basis for a minor rule offense. It's a very fact-intensive analysis, and it's not only fact-intensive as to what the defendant did. It's also fact-intensive as to what the other participants did. And in this case, even if we consider the entire scope of other participants that Mr. Flores suggests, bar one, I'll get to that in a second if the court will allow me, but if we consider that entire scope of universe, the participation that he ascribes to each of those alleged participants is so scant and unimpressive and so insufficient that those facts in this case are more culpable than those, or at least on equal footing. That would be my answer to your question. I just mentioned that I wanted to get to another point about bar one. My colleague today has spoken about – that he identified an owner in this offense, and that identification would be the most suspect of all the ones he proposed below because that one, even in the arguments made today, is completely speculative. Do you contend Mr. Flores owned the drugs? No, Your Honor, but he – there's nothing in the record I don't recall, and I looked through the record extensively. So he's not the owner. That's the part I don't understand. He's not the owner. You agree he's not the owner. Yes, I agree. There is an owner. Sure, he may not know the name of the owner, but as you look at this crime, if you're not asserting he's the owner, it's somebody or some other group of people. And it seems like he goes to jail for longer because he can't tell us more than what we all know, which is someone else owns the drugs because he can't put a name on the person. It seems like an odd way to punish people. Well, Your Honor, the government's position has never been that he has to name a person, but the person has to be identified in some at least marginally substantial way. Why? I mean why? Logically, why? Because otherwise we would be in the territory that Arias Mercedes stringently warns against. We would be making determinations based on gossamer strands of speculation I think is the exact language. And in this case… Except he would admit there is an owner because it's not him. Your Honor, we don't know if there's an owner, multiple owners. We don't know where that owner is, what they look like. He said the owner in the conversation, right? He said the owner in the conversation between someone he identified as the owner, right? Well, Your Honor, he assumes that's the owner, but there's nothing in the record where that person is tagged as an owner, and I don't recall him being – I don't recall reading in any of the documents in the record that Mr. Flores knew that that person was an owner or that he even believed that person to be an owner. It just says – and I'll go really quickly to the direct quote. Someone who had control enough over the drugs to be able to facilitate the crime, right? Your Honor, not necessarily. It could have just been a quote between somebody tasked with finding – with obtaining mules, a recruiter of some sort, because the appointments, the call he receives is specifically asking him if he knows somebody that can do it. So I think it could be equally a fair assessment that this person, rather than being some owner or a person high up in an unspecified organization, could just be a recruiter tasked with simply obtaining or securing people that can carry out this. I notice in all the cases there's a quote that appears in all – that apparently goes into all the government sentencing memoranda that are all the people who are involved in these kinds of cases. And it was in each of these cases, so I assume it's something that is in your language.  And so it seems to me like this whole theory is the most head-in-the-sand approach, which is we know there's all these people, but we really think this guy should go to jail more because you don't have – you, defendant, can't show exactly who they are, but we all know they're there, but nevertheless, too bad for you, when in fact what we're not doing is what I think the guideline is asking us to do, which is really think about this person and what did they do, and are they really – should they be really tagged with what often ends up being a lot of drugs, right? High quantities, high guideline ranges, and then we're sort of ignoring this method to try to bring some rationality to that, which is this person really was not at the high end of this thing. And you're saying really for technical reasons that are inconsistent with other things you sort of acknowledge, do it this way. And that means he goes to jail for a really long time. That really doesn't make a lot of sense. Your Honor, I don't believe that the analysis can shape out that way, and I don't think fashioning the analysis in that manner is consistent with Walker, Arias, or Eve, or any of the courts present. There has to be a universal participant that is identifiable and borne out by the record. Is it inconsistent with the policy for the amendment, which is they're trying to rule out people who are less hopeful or those who are the key fans of the organization? There's no policy. Your Honor, I somewhat push back on that notion, although I do acknowledge that that was part of the policy that led to the amendment. But if the intention of the Sentencing Commission was for the analysis to shake out in that manner and that mules or couriers or drug transporters be entitled to the mitigating rule of fence or be almost guaranteed it, then the court would have fashioned the guideline and the commission would have fashioned the guideline differently. They give five non-exhaustive factors for the court to consider. That's how they try to come up with some policy considerations for ruling out the least culpable. Yes, Your Honor, but the Sentencing Commission also instructs that those factors have to be weighed on in the totality of the circumstances in comparison to the average participant between the participants in this specific offense. So if the intent of the commission had been for courts to consider rules and speculative participants that are not brought out by the record, I think the guideline would have been fashioned in a different manner. I don't think that's what the guideline instructs, and I don't think that's what this court's precedent instructs either. Counsel, thank you. Thank you, Your Honors. We request that the court affirms. Okay, Mr. Suedo, you have two minutes for rebuttal. Please reintroduce yourself on the record to begin. Your Honor, I would like to address the point by the government regarding the record. The record was undisputed specifically of the six participants that we identified. Now, as the court mentioned, in Supplemental Appendix 36, the government listed additional participants that in this conspiracy participate. Whether that was sufficient or not, that is for the government to be able to have more information. They were the ones that made that representation. And ultimately, that representation was to argue that Mr. Flora was no more or less culpable because he played an indispensable role in the offense. And that goes to the policy behind the amendment and shows the specific concern for meals and curries, because the fact that in every conspiracy, that every time there's a meal in court, they are going to be indispensable. And by rejecting that without a reason to deny the amendment, the court is showing that it is concerned specifically with meals. And again, I would ask, based on this, if Mr. Flores is not eligible for this reduction, it is hard to imagine that any meal would receive that. Thank you. Thank you, Counselor. Thank you both. That concludes argument in this case.